UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LAURA ELENA GONZALEZ,<br><br>Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant. | Case No. 1:20-cv-00336-EPG<br><br>**FINAL JUDGMENT AND ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT**<br><br>(ECF Nos. 17, 22) |

This matter is before the Court on Plaintiff's complaint for judicial review of an unfavorable decision by the Commissioner of the Social Security Administration regarding her application for Disability Insurance Benefits and Supplemental Security Income. The parties have consented to entry of final judgment by the United States Magistrate Judge under the provisions of 28 U.S.C. § 636(c) with any appeal to the Court of Appeals for the Ninth Circuit. (ECF Nos. 7, 10, 12.)

At a hearing on June 22, 2021, the Court heard from the parties and, having reviewed the record, administrative transcript, the parties' briefs, and the applicable law, finds as follows:

**I.    Chronic Heart Failure**

Plaintiff claims that the ALJ erred at step three of the sequential evaluation process by failing to consider whether Plaintiff meets listing 4.02 for chronic heart failure. (ECF No. 17 at 9-

1

11.) Alternatively, the ALJ failed to consider whether Plaintiff's chronic heart failure was severe at step two. (*Id.* at 11.)

At step three, the ALJ must evaluate the claimant's impairments to decide whether they meet or medically equal any of the impairments listed in 20 C.F.R. § 404, Subpart P, App. 1. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). "To meet a listed impairment, a claimant must establish that he or she meets each characteristic of a listed impairment relevant to his or her claim. To equal a listed impairment, a claimant must establish symptoms, signs, and laboratory findings at least equal in severity and duration to the characteristics of a relevant listed impairment[.]" *Id.* at 1099. A claimant who satisfies the test at the third step is entitled to benefits and the evaluation ends. *Kennedy v. Colvin,* 738 F.3d 1172, 1175 (9th Cir. 2013).

The burden of proof is on the claimant to establish he or she meets or equals any of the impairments in the listings. *Tackett*, 180 F.3d at 1098. "A generalized assertion of functional problems is not enough to establish disability at step three." *Id.* at 1100 (citing 20 C.F.R. § 404.1526). An ALJ "must evaluate the relevant evidence before concluding that a claimant's impairments do not meet or equal a listed impairment." *Lewis v. Apfel*, 236 F.3d 503, 512 (9th Cir. 2001). An ALJ's finding that a plaintiff does not meet listing criteria must be supported by substantial evidence. *See Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) (applying the substantial evidence standard at step three).

The ALJ made the following findings at step three:

> The claimant's impairments, considered singly and in combination, do not meet or medically equal the criteria of any medical Listing, including those found under Listing 13.01. No treating or examining physician has recorded findings equivalent in severity to the criteria of any listed impairment, nor does the evidence show medical findings that are the same or equivalent to those of any listed impairment.

(A.R. 29.)

Plaintiff argues that the ALJ erred by failing to evaluate relevant evidence showing that Plaintiff meets or medically equals Listing 4.02.[1] (ECF No. 17 at 10.) Plaintiff's medical history

---

[1] Listing 4.02 states:

> **4.02 *Chronic heart failure*** while on a regimen of while on a regimen of prescribed treatment, with symptoms and signs described in 4.00D2. The required level of severity for this impairment is met when the requirements in *both A and B* are satisfied.
> **A.** Medically documented presence of one of the following:

2

establishes that she has suffered chronic congestive heart failure since 2016 and, in relevant part, she was unable to perform an exercise tolerance test. (*Id.* at 11.) However, the ALJ failed to acknowledge or discuss these objective findings. (*Id.*) Alternatively, the ALJ erred by failing to consider the severity of Plaintiff's chronic heart failure at step two as well as Plaintiff's functional limitations resulting from this impairment when developing the RFC. (*Id.*)

In the opposition, the Commissioner argues that Plaintiff had the burden of providing medical evidence of a cardiac impairment and of proving that this impairment satisfies the criteria of a listed impairment. (ECF No. 22 at 6.) The treadmill stress testing Plaintiff relies on indicates that she reached stage 3 of Bruce protocol before it was terminated and converted to a pharmacologic stress test, and she was at a workload equivalent in excess of 7 METS. (*Id.* at 7-8.) Plaintiff therefore has not satisfied the B criteria in Listing 4.02. (*Id.*)

On reply, Plaintiff contends that there is no evidence that Plaintiff completed stage 3 of the testing, and only that she completed stages 1 and 2 and was unable to perform stage 3 as

---

> 1. Systolic failure (see 4.00D1a(i)), with left ventricular end diastolic dimensions greater than 6.0 cm or ejection fraction of 30 percent or less during a period of stability (not during an episode of acute heart failure); or
> 2. Diastolic failure (see 4.00D1a(ii)), with left ventricular posterior wall plus septal thickness totaling 2.5 cm or greater on imaging, with an enlarged left atrium greater than or equal to 4.5 cm, with normal or elevated ejection fraction during a period of stability (not during an episode of acute heart failure);
> AND
> **B.** Resulting in one of the following:
> 1. Persistent symptoms of heart failure which very seriously limit the ability to independently initiate, sustain, or complete activities of daily living in an individual for whom an MC, preferably one experienced in the care of patients with cardiovascular disease, has concluded that the performance of an exercise test would present a significant risk to the individual; or
> 2. Three or more separate episodes of acute congestive heart failure within a consecutive 12-month period (see 4.00A3e), with evidence of fluid retention (see 4.00D2b(ii)) from clinical and imaging assessments at the time of the episodes, requiring acute extended physician intervention such as hospitalization or emergency room treatment for 12 hours or more, separated by periods of stabilization (see 4.00D4c); or
> 3. Inability to perform on an exercise tolerance test at a workload equivalent to 5 METs or less due to:
> a. Dyspnea, fatigue, palpitations, or chest discomfort; or
> b. Three or more consecutive premature ventricular contractions (ventricular tachycardia), or increasing frequency of ventricular ectopy with at least 6 premature ventricular contractions per minute; or
> c. Decrease of 10 mm Hg or more in systolic pressure below the baseline systolic blood pressure or the preceding systolic pressure measured during exercise (see 4.00D4d) due to left ventricular dysfunction, despite an increase in workload; or
> d. Signs attributable to inadequate cerebral perfusion, such as ataxic gait or mental confusion.

20 C.F.R. § Pt. 404, Subpt. P, App. 1 (emphasis in original).

required. (ECF No. 24 at 2.) Plaintiff was not able to complete the exercise test and instead received a pharmacologic test due to her inability to sustain the exercise as a result of her fatigue and pain, and she therefore met the B criteria of Listing 4.02. (*Id.*)

The ALJ did not mention Listing 4.02 or Plaintiff's chronic heart failure at step three. (A.R.) The medical record contained evidence that Plaintiff had medically-documented systolic failure and was unable to perform an exercise tolerance test. The ALJ's decision does not indicate whether he considered the evidence regarding Plaintiff's chronic heart failure before concluding that her impairments do not meet or equal any listing. (*Id.*) Therefore, the ALJ erred at step three.

The Court finds that the error is not harmless. The parties dispute whether the results of Plaintiff's stress testing mean that she is unable to perform on an exercise tolerance test at a workload equivalent to 5 METs or less pursuant to the B criteria of Listing 4.02. However, the medical evidence indicates that Plaintiff was unable to complete the test and it is not clear to the Court these results are sufficient to meet the B criteria. Further, it is more appropriate for the ALJ to weigh this evidence. *See Fulgencio S. v. Berryhill*, 2018 WL 6248545, at *7 (C.D. Cal. Nov. 29, 2018) (declining to make specific factual findings regarding the paragraph B criteria because it is "a responsibility reserved to the Commissioner").

The Court also considers whether the ALJ erred in his analysis at step two. The evaluation of claimed impairments at step two is a *de minimis* test intended to weed out the most minor of impairments, as well as functioning as a screening device to dispose of patently groundless claims. *See Bowen v. Yuckert*, 482 U.S. 137, 153-154 (1987); *Edlund v. Massanari*, 253 F.3d 1152, 1158 (9th Cir. 2001) (quoting *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996)); *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005). Thus, a finding of non-severity at step two must be "clearly established by medical evidence" (*see id.*), and if a claimant meets her evidentiary burden under Step Two's *de minimis* standard, an ALJ "must find that the impairment is 'severe' and move to the next step" in the five-step evaluation process. *See Edlund*, 253 F.3d at 1160. "Regardless of whether the evidence related to a severe impairment establishes disability at step three, or ultimately leads to a finding of disability in combination with the claimant's other impairments, it [is] error not to recognize an impairment as severe when the medical evidence does not clearly establish that the impairment had no more than a minimal effect on the claimant's

4

ability to work at the relevant time." *O'Bosky v. Astrue*, 651 F. Supp. 2d 1147, 1160 (E.D. Cal. 2009).

In this case, the ALJ found Plaintiff's neoplasm of the breast and treatment to be severe at step two. (A.R. 28.) The ALJ reasoned as follows:

> There is evidence that the claimant has been diagnosed with the medically determinable impairments of hypertension and diabetes. The medical and other evidence establish that these medically determinable impairments cause only slight abnormalities that would have no more than a minimal effect on her ability to work (20 CFR 404.1521, 416.921; and SSRs 85-28, and 96-4p).
>
> The claimant's hypertension was being managed medically and should be amenable to proper control by adherence to recommended medical management and medication compliance. The medical records show the claimant's blood pressure level is often within normal limitations or only slightly elevated. The claimant's blood pressure measured at 118/71 in February 2017 (Exhibit 3F, p. 9). In addition, there is no evidence of any end organ damage, history of stroke, cardiovascular disease, or functional limitations related to the claimant's elevated blood pressure. Although echocardiograms revealed reduced estimated left ventricle ejection fractions of 30 to 35 percent and 45 to 50 percent, there was no evidence of ischemia, the claimant testified that her hypertension is controlled, and the treatment plan as of August 2018 was merely to monitor the claimant's condition (Exhibits 3F, p. 22, 21F, p. 1). Accordingly, I find the claimant's medically determinable impairment of hypertension is nonsevere.

(A.R. 28-29.)

The ALJ's analysis only briefly acknowledged Plaintiff's left ventricle ejection fractions of 30 to 35 percent in the context of considering Plaintiff's hypertension. The ALJ otherwise did not specifically discuss Plaintiff's chronic heart failure or cardiomyopathy in the step two analysis. The single reference to Plaintiff's left ventricle ejection fractions in the context of hypertension is not substantial evidence to find Plaintiff's chronic heart failure or cardiomyopathy nonsevere. Plaintiff produced evidence of congestive heart failure dating back to 2016. (*See* A.R. 364, 359-60, 365, 673, 739, 752, 759-61, 863, 866-68.) The medical evidence does not clearly establish that Plaintiff's heart failure or cardiomyopathy was a slight abnormality having no more than a minimal effect on her ability to work. Thus, the ALJ's finding of nonseverity is not supported by substantial evidence.

///

5

## II. Failure to Develop the Record

Plaintiff argues that the ALJ's RFC finding is not supported by substantial evidence because it is based on the opinions of non-examining physicians who did not review the complete medical file and the ALJ included limitations that were not based on evidence from a medical professional. (ECF No. 17 at 12-14.) The ALJ was required to further develop Plaintiff's medical history rather than making an independent evaluation of Plaintiff's functional limitations. (*Id.* at 12.)

"When evaluating the medical opinions of treating and examining physicians, the ALJ has discretion to weigh the value of each of the various reports, to resolve conflicts in the reports, and to determine which reports to credit and which to reject." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1042 (9th Cir. 2007); *see also Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 603 (9th Cir. 1999) (holding that ALJ was "responsible for resolving conflicts" and "internal inconsistencies" within doctor's reports); *Tommasetti v. Astrue*, 533 F.3d 1035, 1041-1042 (9th Cir. 2008) ("[T]he ALJ is the final arbiter with respect to resolving ambiguities in the medical evidence."). The RFC assessment is based on all the evidence in the record, and it is the ALJ's duty to consider and weigh that evidence. *Lingenfelter,* 504 F.3d at 1042. However, an ALJ may not render his or her own medical opinion and is not empowered to independently assess clinical findings. *See, e.g., Tackett v. Apfel*, 180 F.3d 1094, 1102–03 (9th Cir. 1999) (holding an ALJ erred in rejecting physicians' opinions and rendering his own medical opinion); *Banks v. Barnhart*, 434 F. Supp. 2d 800, 805 (C.D. Cal. 2006) ("An ALJ cannot arbitrarily substitute his own judgment for competent medical opinion, and he must not succumb to the temptation to play doctor and make his own independent medical findings.").

With respect to the ALJ's duty to develop the record, the Ninth Circuit has held:

> The ALJ in a social security case has an independent duty to fully and fairly develop the record and to assure that the claimant's interests are considered. This duty extends to the represented as well as to the unrepresented claimant. When the claimant is unrepresented, however, the ALJ must be especially diligent in exploring for all the relevant facts .... The ALJ's duty to develop the record fully is also heightened where the claimant may be mentally ill and thus unable to protect [their] own interests. Ambiguous evidence, or the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence, triggers the ALJ's duty to conduct an appropriate inquiry.

*Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001) (citations and quotation marks omitted).

Here, when evaluating the medical opinion evidence, the ALJ found as follows:

> As for the opinion evidence, I have given some weight to the opinions of the State agency medical consultants. On initial review and reconsideration, they concluded that the claimant is able to perform work at the light exertional level, except she is occasionally able to perform postural activities, and she is occasionally able to reach overhead with the left upper extremity (Exhibits 1A-2A, 5A-6A). The State agency consultants did not have the opportunity to review the entire medical record or to listen to the claimant's testimony. Their limitations regarding the claimant's ability to reach overhead is consistent with the medical evidence of record. However, I have elected to adopt additional restrictions regarding reaching in all other directions and operation of hand controls, as well as environmental limitations to accommodate the claimant's complaints of pain and weakness. For the same reason, I adopted greater exertional limitations.

(A.R. 32.)

The state agency physicians did not review any medical records concerning Plaintiff's heart failure or cardiomyopathy. These records contained medically complicated diagnoses regarding Plaintiff's heart health that warranted some medical opinion testimony. Further, the ALJ acknowledged that the state agency physicians had not reviewed the entire record and discounted their opinions on that basis.

The Commissioner argues that the ALJ properly evaluated the opinion evidence and articulated legally sufficient reasons for giving some weight to the state agency physicians. (ECF No. 22 at 8-12.) However, the question before the Court is not whether the reasons for discounting the state agency physicians' opinions were legally sufficient, but whether the RFC findings are supported by substantial evidence.

The Commissioner correctly notes, and Plaintiff concedes, that the ALJ is not required to seek a medical opinion solely because additional medical records were provided after the state agency physicians' review. (*See* ECF Nos. 22 at 11-12, 24 at 4.) However, in this case, there were no medical records at all considered by any physician concerning Plaintiff's cardiac impairment. Thus, this case is distinguishable from situations were medical opinions relied on less than a full set of medical records regarding a certain impairment. Without a review of any medical documents regarding Plaintiff's cardiac condition, there was no medical opinion testimony on this

impairment, or any work limitations that would result from such an impairment.

Accordingly, the ALJ had a duty to further develop the record regarding Plaintiff's cardiac condition.

### III. Plaintiff's Subjective Symptom Testimony

Finally, Plaintiff claims that the ALJ erred in evaluating her subjective symptom testimony. (ECF No. 17 at 14-16.)

The Ninth Circuit has summarized the ALJ's task with respect to assessing a claimant's credibility as follows:

> To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis. First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged. The claimant, however, need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom. Thus, the ALJ may not reject subjective symptom testimony ... simply because there is no showing that the impairment can reasonably produce the degree of symptom alleged.
>
> Second, if the claimant meets this first test, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so[.]

*Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007) (citations and quotation marks omitted). Given that there is objective medical evidence of an underlying impairment, the Court examines whether the ALJ rejected Plaintiff's subjective symptom testimony by offering specific, clear, and convincing reasons.

The ALJ first summarized Plaintiff's hearing testimony. (A.R. 30-31.) The ALJ then acknowledged that Plaintiff's "testimony regarding her diagnosis and course of treatment is generally consistent with the medical evidence of record" and discussed the relevant medical evidence. (A.R. 31-32.) The ALJ then noted that Plaintiff "showed improvement" after participating in physical therapy and concluded that "the claimant's neoplasm of the breast and treatment do effect the claimant's ability to perform work activities and therefore she is limited as described in the residual functional capacity set forth above." (A.R. 32.)

Plaintiff argues that Plaintiff's temporary improvement in November of 2016 is not a convincing reason for wholly discounting Plaintiff's allegations regarding the severity of her

limitations. (ECF No. 17 at 15.) In opposition, the Commissioner argues that the ALJ properly found that Plaintiff's testimony was inconsistent with objective and other evidence of record and this finding was supported by substantial evidence. (ECF No. 22 at 12-17.) The ALJ also did not wholly discount Plaintiff's allegations and accommodated Plaintiff's complaints of pain and weakness. (*Id.* at 16.) Plaintiff, on reply, contends that the ALJ's summary of Plaintiff's medical history and treatment is not sufficient to reject her subjective complaints. (ECF No. 24 at 4.)

The ALJ did not provide any reason, much less clear and convincing reasons, for discounting Plaintiff's testimony that she must lie down and rest for four to six hours and can only lift and carry five pounds at a time. (A.R. 31.) Plaintiff suggested that these issues were connected with her cardiac condition during the hearing on this matter. In light of the Court's findings above regarding the ALJ's lack of sufficient consideration of Plaintiff's cardiac impairments, the Court is especially concerned that the ALJ lacked clear and convincing reasons for discounting these arguably related limitations.

In light of Plaintiff's testimony regarding her fatigue and the lack of discussion of the medical evidence of chronic heart failure or cardiomyopathy, this is not a clear and convincing reason for discounting Plaintiff's testimony.

**IV.     Remedy**

The decision whether to remand for further proceedings or for immediate payment of benefits is within the discretion of the Court. *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000). To determine which type of remand is appropriate, the Ninth Circuit uses a three-part test. *Id.* at 1020; *see also Treichler v. Comm'r*, 775 F.3d 1090, 1100 (2014) ("credit-as-true" rule has three steps). First, the ALJ must fail to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion. *Garrison*, 759 F.3d at 1020. Second, the record must be fully developed, and further administrative proceedings would serve no useful purpose. *Id.* Third, if the case is remanded and the improperly discredited evidence is credited as true, the ALJ would be required to find the claimant disabled. *Id.* To remand for an award of benefits, each part must be satisfied. *Id.*; *see also Treichler*, 775 F.3d at 1101 (When all three elements are met, "a case raises the 'rare circumstances' that allow us to exercise our discretion to depart from the ordinary remand rule."). The "ordinary remand rule" is the proper course except

in rare circumstances. *Treichler*, 775 F.3d at 1101.

As to the ALJ's error at step three, Plaintiff argues that she has met her burden of showing she is presumptively disabled at step three and this matter should be remanded for calculation of benefits with a directed finding of disability. (ECF No. 17 at 11.) However, the Court finds that remand is appropriate. As mentioned above, it is not clear from the record whether or not the medical evidence of stress testing means that Plaintiff is unable to perform on an exercise tolerance test at a workload equivalent to 5 METs or less as required by the B criteria of Listing 4.02. The ALJ should resolve this question. Further, remand is appropriate so that the ALJ can evaluate the severity of Plaintiff's chronic heart failure or cardiomyopathy, proceed beyond step two with respect to all severe impairments, and properly consider the previously omitted impairments in combination with all of Plaintiff's impairments, whether severe or not.

As to the ALJ's errors in failure to develop the record and discounting Plaintiff's subjective symptom testimony, Plaintiff argues that the ALJ's error "warrants remand for proper evaluation of Plaintiff's limitations resulting from her physical impairments, and the true impact of Plaintiff's pain." (ECF No. 17 at 15.) In light of Plaintiff's request, the Court will remand the case for further proceedings so that the ALJ may further develop the record and reevaluate Plaintiff's subjective symptom testimony regarding her cardiac impairments consistent with this order.

**V.      Conclusion**

For the foregoing reasons, the Court remands this case to the ALJ. On remand, the ALJ shall evaluate the severity of Plaintiff's cardiac impairments, proceed beyond step two with respect to all severe impairments, and properly consider the previously omitted impairments in combination with all of Plaintiff's impairments, whether severe or not. At step three, the ALJ shall consider whether Plaintiff's impairments meet or equal Listing 4.02. At step four, the ALJ shall further develop the record, including by obtaining additional medical opinions regarding Plaintiff's cardiac impairments. The ALJ shall also weigh Plaintiff's subjective symptom testimony regarding her cardiac impairments.

\\\
\\\

Accordingly, the decision of the Commissioner of the Social Security Administration is REVERSED and REMANDED for further administrative proceedings consistent with this decision.

IT IS SO ORDERED.

Dated: **July 2, 2021**  /s/ Eric P. Grojean
UNITED STATES MAGISTRATE JUDGE